**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

KURTIS LEE SOLOMON,

Defendant.

3:22-cr-00022-RCJ-CSD

**REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Re: ECF No. 26

    This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Defendant Kurtis Solomon filed a motion to suppress his statements to law enforcement and evidence from a search of his laptop computer and phone (ECF No. 26). Plaintiff United States (the government) filed a response (ECF No. 37). Defendant filed a reply (ECF No. 40). District Judge Robert C. Jones referred the matter to the undersigned to conduct an evidentiary hearing and issue a report and recommendation.

    The court held an evidentiary hearing on June 29, 2023 (ECF No. 48). Witnesses Kristina Ely (Homeland Security Investigations), the defendant, and Donna Solomon testified at the hearing. After

1

considering the briefs filed by the parties, evidence presented at the hearing, and oral argument, the court rules as follows.

The court recommends that defendant's motion to suppress (ECF No. 26) be denied. The court finds defendant was not subject to custodial interrogation that would trigger the requirement of *Miranda* warnings. Defendant also provided voluntary written and verbal consent to the officers to search his laptop computer. Under the totality of circumstances, the court finds the defendant was not in custody during the interview, and the defendant provided voluntary consent to search his laptop computer.

## **BACKGROUND**

After receiving a tip[1] from a family member that defendant may be downloading and viewing child pornography on his computer, law enforcement agents from Department of Homeland Security and the Lyon County Sheriff's Office[2] went to defendant's residence in Fernley, Nevada, for a "knock and talk" on September 9, 2021. One of the officers was wearing an audio recording device, and the audio recording was submitted as evidence at the hearing[3] (Gov't Ex. 3). The court has reviewed the audio recording in its entirety.

The officers came to defendant's residence and spoke to his spouse (Donna Solomon). She informed the officers that defendant was away at the dump. The officers explained that they were following up on a matter related to "internet activity." Defendant's spouse immediately responded

---

[1] The tip was provided to Homeland Security Investigations by the defendant's daughter-in-law and stepson.
[2] The officers were HIS Agent Ely, HSI Cyber Operations Officer Theberge, and Lyon County Detective Kusmerz. Agent Ely and Detective Kusmerz are heard on the recording talking to defendant and his spouse. Officer Theberge is a computer forensics specialist and not a law enforcement officer.
[3] At approximately 1 hour and 22 minutes into the recording, the defendant arrives home and begins speaking with the officers. Prior to the defendant's arrival, the officers spoke with the defendant's spouse, and she provided consent to search her laptop and cell phone.

that it was about "porn, right?" The officers told her that it was about child pornography, not adult pornography. (Gov't Ex. 3, 0:09:26 to 0:09:40). She told the officers that "I am sure it is something that popped up" on her husband's computer. (Gov't Ex. 3, 0:12:34 to 0:12:37). Defendant's spouse invited the officers into the residence and spoke to them at length about a wide variety of issues (moving from Arizona to Nevada, their daughter and grandchildren, the new house, etc.). During the conversation, Donna also provided consent for the officers to search her computer. The audio recording of the meeting with Ms. Solomon lasts over one hour, and they spoke about various issues while waiting for the defendant to return from the dump. At one point, the agents apologized for wasting her time, and she responded, "You are not wasting my time, I have someone to talk to."

When the defendant arrived back at the residence, the officers introduced themselves to him. Ms. Solomon stepped outside to smoke a cigarette. The officers explained to the defendant they were investigating internet activity involving child pornography and were there to ask him if he would consent to a search of his computer. Defendant stated that he has "seen some of it [child pornography] . . . It pops up every now and then" when he searches for adult porn.

One of the officers explained the consent-to-search form. The defendant said, "Then what are you going to do, arrest me?" (Gov't Ex. 3, 1:22:52 to 1:25:00). The agent told him that he would not be arrested and that he was not going to jail. The defendant was provided with a written consent to search form (Ex. 1), and he asked what would happen if he did not sign it. The officer explained that they would not do the search, that he was not under arrest, and that he was not going to jail. (Gov't Ex. 3, 1:27:56 to 1:28:22). The officer explained the form and that it was for consent to search the computer.[4] The officer explained that she received a tip that defendant had been downloading child pornography.

---

[4] During his testimony at the hearing, the defendant alleged the officers only gave him "fifteen to twenty

Agent Ely explained the consent form to the defendant. "So you're voluntarily giving us consent. You're not under arrest right now while we're talking to you. This is voluntary. It says it right here. You'll write your name. It says that you're voluntarily giving your consent to have your devices searched." (Gov't Ex. 3, 1:28:28 to 1:28:40). The agent testified that the defendant appeared to read the document. The defendant signed the consent form (to search his laptop and phone) (Gov't Ex. 1) and said, "[Child porn] is all over the computers nowadays." (Gov't Ex. 3, 1:30:05 to 1:30:08).

During the evidentiary hearing, the defendant testified that the agents told him that if he did not consent to the search of his computer that the agents would get a search warrant to search it. This allegation is not supported by the audio recording, and the court does not find defendant's testimony on this issue to be credible. The defendant admitted during his testimony that he did *not* review the audio recording of his interview with the officers. Instead, he testified based on his memory of the interview and circumstances that occurred in September 2021.

The officers asked the defendant questions about which websites he had seen child pornography on. Defendant said the child pornography "shows up every now and then" on websites he called "strawberry" and "three cherries." Defendant said that he searches for adult pornography and child pornography images "show up once in a while." One of the officers told defendant that child pornography does "not just pop up" and that a person has to search for it on the internet.

At one point, defendant's wife asked him if he was okay and if he was angry. Defendant responded that he was okay and not angry and said, "Some of those things pop up and may have been on my computer off and on." (Gov't Ex. 3, 1:38:41 to 1:38:54). He did not recall the specific websites but said he had some of them saved under his "favorites" on his laptop. Defendant provided the

---

seconds" to review the consent form. However, the audio recording contains a discussion by Agent Ely explaining the consent to search form to the defendant (Gov't Ex. 3, 1:27:44 to 1:32:12) which contradicts the defendant's testimony that he did not have sufficient time to read and understand the consent form.

officers with his password for the laptop.  Defendant said that he last saw images that morning and that some of the images involved young children (as young as three years old).  (Gov't Ex. 3, 1:53:07 to 1:53:26).  The officer (Agent Ely) informed defendant that the forensics expert had found the searches and that they were going to take the computer to conduct a "full forensic search."  The defendant signed a receipt acknowledging seizure of the computer and the agents provided him with their cards.  The defendant again told the officers that the child pornography "stuff pops up when you are surfing" the internet.

**Credibility of Witnesses**

The court conducted an evidentiary hearing in order to make an accurate determination of what occurred in the instant case and how the facts relate to the applicable case law.  "The longstanding and repeated invocations in caselaw of the need of district courts to hear live testimony so as to further the accuracy and integrity of the factfinding process are not mere platitudes.   Rather, live testimony is the bedrock of the search for truth in our judicial system."  *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012).  "[J]udges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses' demeanor to best ascertain their veracity - or lack thereof."  *Oshodi v. Holder*, 729 F.3d 883, 892 (9th Cir. 2013) (internal citation omitted)*; see also United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (evidentiary hearing required where defendant demonstrates that a significant disputed factual issue exists); *United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995) ("There can be no doubt that seeing a witness testify live assists the finder of fact in evaluating the witness's credibility").

/ / /

/ / /

/ / /

During the evidentiary hearing in this matter, the court had the opportunity to listen to the testimony of HSI Agent Ely, the defendant, and his spouse. The court had the opportunity to observe and evaluate each witness' demeanor while testifying, and to weigh each witness' credibility. In this case, the court also had the benefit of the audio recording of the law enforcement officers interacting with the defendant and his spouse on the date in question. Having done so, the court finds that HSI agent Ely testified credibly and consistently with the audio recording of defendant's interview. The court also listened to the entire audio recording of the officers' conversations with defendant's spouse and their interview of the defendant. The court finds the defendant's testimony on the issue of the consent and voluntariness to be contradicted by the contents of the audio recording.

**Miranda and Custodial Interrogation**

Law enforcement personnel who wish to question individuals in their custody must first afford them certain procedural rights. The most salient of these rights are the so-called "*Miranda* warnings" – prior to questioning, an officer must tell a suspect "that he has the right to remain silent and also the right to the presence of an attorney." *Robertson v. Pichon*, 849 F.3d 1173, 1183 (9th Cir. 2017) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). These warnings are designed to protect a person's Fifth Amendment privilege against compelled self-incrimination. The Supreme Court has reasoned that the privilege is protected when a person is adequately and effectively advised of his rights. *See id.*; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "In order to combat [the pressures inherent in custodial interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights." *United States v. Williams*, 435 F.3d 1148, 1151 (9th Cir. 2006) (quoting *Miranda*, 384 U.S. at 467).

*Miranda* warnings, however, are only required when the person being questioned is subjected to custodial interrogation. *United States v. Barnes*, 713 F.3d 1200, 1204 (9th Cir. 2013) (citing *Rhode*

*Island v. Innis*, 446 U.S. 291, 300 (1980)). The court examines the totality of the circumstances when determining whether an individual was in custody. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The test is whether "a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981)). This requires the court to assess the objective circumstances of the interrogation. *Stansbury v. California*, 511 U.S. 318, 323 (1994). The subjective views of either the suspect or the interrogating officer is not relevant to the custody determination. *Id.*

At the evidentiary hearing, the defendant testified that he "believed" that he had to provide consent to the officers to search his computer and that he had to answer the questions the officers were asking him during the interview. As the Supreme Court and Ninth Circuit have ruled above, the defendant's subjective belief is irrelevant on the issue of custody.

The Ninth Circuit has identified a number of factors relevant to the custody determination: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002). In *United States v. Craighead*, the Ninth Circuit listed additional factors including the number of law enforcement personnel and whether they are armed; whether the suspect was restrained (by physical force or threats); whether the suspect was isolated; and whether he was informed he was free to leave or terminate the interview. 539 F.3d 1073, 1084 (9th Cir. 2008). These factors do not change the court's duty to consider the totality of the circumstances in each case.

*Miranda* warnings function "both to reduce the risk that an involuntary or coerced statement will be admitted at trial and to implement the Fifth Amendment's self-incrimination

clause." *Williams*, 435 F.3d at 1152. "Thus, if a suspect in custody does not receive an adequate warning effectively apprising him of his rights before he incriminates himself, his statements may not be admitted as evidence against him." *Id.* In determining whether a suspect was in custody, "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Stansbury*, 511 U.S. at 322 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

Interrogation under *Miranda* consists of any words or actions on the part of law enforcement officers that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Williams*, 842 F.3d 1143, 1146-47 (9th Cir. 2016). Generally, questions about routine background biographical information such as identity or age do not constitute interrogation. *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006) (citing *United States v. Perez*, 776 F.2d 797, 799 (9th Cir. 1985))*; see also Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990). Whether words or actions are likely to elicit an incriminating response is determined primarily by looking to the perceptions of the suspect being questioned. *Muniz* at 600-01 (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980)). However, the court can consider "any knowledge the police may have had concerning the unusual susceptibility of a defendant to a particular form of persuasion" to determine what the police should have known when acting or speaking. *Innis*, 446 U.S. at 302 n.8.

Here, the court finds that, under the totality of the circumstances (including the *Kim* and *Craighead* factors), defendant was not in custody when the agents interviewed him in his home. Defendant was unrestrained, standing in the kitchen inside his house and was not ordered or forced to that location by the officers. The officers informed the defendant that he was not under arrest and that he was not going to jail. There is no evidence before the court that any of the officers threatened the defendant. Based on the court's review of the audio recording, the tone of the interview

is conversational and not adversarial in nature. Defendant was told that the officers were requesting his voluntary consent to search his computer, and he was not confronted with any other evidence of guilt to obtain his consent or statements. Even when the defendant asked about the consent form and said, "What are you going to do, arrest me?", the officers explained that they would not do the search, that the defendant would not go to jail, and that he was not under arrest.

While the officers did tell defendant that child pornography does not just "pop up" on a person's computer and that a person needs to actively find it, there was nothing to indicate that the agents threatened or coerced the defendant to speak with them or force him to search his computer. The court does not find that the officers applied any unnecessary or unreasonable pressure on the defendant during the interview in his house. The officers also did not coerce or threaten the defendant to obtain his oral and written consent to search his computer. The court finds that a reasonable person, under these circumstances, would feel free to stop the interview and ask the officers to leave his house. Therefore, the court finds that under the totality of the circumstances, defendant was not in custody.

The court acknowledges that the Ninth Circuit has ruled in *Craighead* that a person can be in custody for *Miranda* purposes if the home "had become a police-dominated atmosphere." 39 F.3d at 1089. In *Craighead*, eight law enforcement officers from three different agencies executed a search warrant at the defendant's home. *Id.* at 1085. The officers were armed, wore protective gear, and some unholstered their firearms in Craighead's presence. *Id.*

The factual scenario in the present case involving Mr. Solomon does not mirror *Craighead* and is much the opposite. The two officers conducted a knock and talk; they did not execute a search warrant. Evidence presented at the hearing was that the two officers wore plain clothes and had their firearms concealed. The third person was a computer specialist who is not a law enforcement officer.[5]

---

[5] The court did not hear the computer specialist (Mr. Thebarge) ask any questions of the defendant or his spouse

Evidence was presented at the hearing that the defendant spoke to Agent Ely in his kitchen while Detective Kusmerz and Mr. Thebarge were standing on the other side of the kitchen counter.[6]  The court finds this is much different from *Craighead* where agents escorted the subject to a storage room, closed the door, and one agent asked questions while another armed agent blocked the exit of the room.  *Id*. at 1078.

### Voluntariness of Defendant's Statements and Consent

Defendant also alleges his statements and consent were involuntary due to the alleged coercive nature of the interview.  The government has the burden to establish voluntariness by a preponderance of evidence.  *United States v. Bautista,* 362 F.3d 584, 589 (9th Cir. 2004).  The court considers whether the "'defendant's will was overborne' by the circumstances surrounding the giving of [the] confession."  *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 2331, 147 L.Ed. 2d 405 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed. 2d 854 ((1973).  In evaluating voluntariness of a confession, the court will consider the interrogation and defendant's individual characteristics.  *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (involuntary confession by "intellectually disabled eighteen-year-old" with IQ of 65).  The court finds the government has met its burden under the totality of circumstances of this case.

Defendant testified that he 67 years old, with an 11th grade education, and has trouble hearing.  He has worked a variety of jobs during his lifetime (served in the Navy; operated an excavating company; operated a commercial fishing company; drove a school bus; and now works as a production-line worker at Tesla).  At the evidentiary hearing, the defendant repeatedly needed counsel to repeat questions to him because he said it was difficult to hear.  However, in the court's review of

---

during the audio recording of the interview at defendant's home.

[6] Agent Ely's tone and manner in speaking with the defendant was conversational, not accusatory or aggressive in nature.

the audio recording of defendant's interview, there are no points at which he displays inability to hear or understand questions of the agents.    The audio recording of the interview clearly shows the voluntariness of the defendant's statements and consent.    The interview was not coercive or even adversarial.    The tone of the interview was, in fact, conversational.    Agent Ely and Detective Kusmerz did not threaten, raise their voices, or act aggressively with the defendant during the approximately 45-minute interview.    Unlike the scenario in *Preston* in which the intellectually disabled teenage was subjected to coercive interrogation techniques, Mr. Solomon is an older man with significant life experience who was asked (and then voluntarily answered) questions in a conversational interview inside his home kitchen.

## **RECOMMENDATION**

Based on the totality of the circumstances, the court finds that defendant was not subjected to custodial interrogation when the officers interviewed him at his house and received voluntary consent to search his laptop computer.    Therefore, the court finds that Defendant's statements and consent to search were not subject to custodial interrogation requiring *Miranda* warnings.    The court also finds the defendant's statements and consent were voluntary and not the product of any coercion. Accordingly, the court recommends that defendant's motion to suppress (ECF No. 26) be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Judge.

/ / /

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  July 5, 2023.

_____
CRAIG S. DENNEY
UNITED STATES MAGISTRATE JUDGE

12